UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Anita L. Stringfellow
710 Fifty Sixth Place, N.E.
Washington, DC 20019

        Plaintiff,

Vs.

CASE NO:

Stephen A. Perry, Administrator
U.S. General Services Administration
National Capital Region
Program Support Division (WCA)
301 7th Street, N.W.
Washington, DC 20407-0001

        Defendant,

## COMPLAINT

NOW COMES Plaintiff, Ms. Anita L. Stringfellow (herein referred to as "Stringfellow", "Plaintiff") by way of her attorney, Morris E. Fischer, Esq. and sues U.S. General Services Administration (herein referred to as "GSA") for reasons therefore states, that at all times mentioned in this complaint:

### COMPLAINT AND REQUEST FOR JURY TRIAL

### Preliminary Statement

This is an action by Plaintiff Anita Stringfellow ("Stringfellow", "Plaintiff") to redress actions taken individually and collectively by Defendant, the U.S. General Services Administration ("GSA") based on Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000(e) *et seq* and Section 501 of the Rehabilitation Act of 1973, 29

1

U.S.C. 791. et. seq.

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. sec. 1331 for claims arising under federal law, i.e., Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. 791. et. seq.

2. There is an actual controversy between Plaintiff and Defendant.

3. Plaintiff timely filed an EEO administrative complaint.

4. On June 4, 2007, Plaintiff requested a final agency decision on the administrative complaint.

5. A Final Agency Decision was issued September 7, 2007 and was received on or about September 10, 2007 (exhibit"A").

6. Plaintiff has met all of the administrative prerequisites.

7. Upon information and belief, Defendant, the General Services Administration is a federal agency located in Washington, DC.

8. At all times relevant to this case, Defendant, GSA has been an employer and has engaged in an industry affecting commerce, has employed fifteen or more employees, and otherwise has been an employer, within the meaning of 42 U.S.C. Sec 2000(b).

9. Plaintiff has been employed as Management Analyst, GS-0431-12.

10. Plaintiff worked for Defendant GSA. for thirty-two years.

11. Plaintiff suffered from a stroke on January 29, 2006.

12. Plaintiff was sent to the George Washington University Hospital on the day of her stroke.

13. Mr. Alonzo Tyler, GS-14, GSA/WCA/NCR, was Plaintiff's first level supervisor.

14. Plaintiff was harassed by Mr. Tyler on February 3, 2006 while she was lying in the hospital paralyzed recovering from the stroke.

15. Plaintiff was harassed by Mr. Tyler on February 6, 2003 while she was lying in the hospital paralyzed recovering from the stroke.

16. Mr. Tyler had Ms. Olivia Jefferson call Plaintiff on February 6, 2006 at 9am during her first physical therapy session in the hospital.

17. Mr. Tyler had Ms. Jefferson ask Plaintiff about her work project and computer password during the phone call on February 6, 2006 at 9am.

18. Plaintiff told Ms. Jefferson that she was busy and that she would call Mr. Tyler later.

19. Ms. Jefferson was instructed by Mr. Tyler to call Plaintiff a second time in the same day.

20. Plaintiff's husband witnessed both phone calls.

21. Plaintiff's husband called Mr. Tyler telling him not to call Plaintiff at the hospital with work related issues.

22. Mr. Tyler responded, "I only asked her one question, are you telling me she doesn't need her job?"

23. Plaintiff's husband said, "I did not say she doesn't need her job I said she does not need the added stress so I'm asking you to refrain from calling her in the hospital."

24. Mr. Tyler said, "This conversation is over," and hung up the phone.

25. Previously, Plaintiff's husband had told Mr. Tyler that Plaintiff had suffered from a stroke, could not walk, was partially paralyzed on the left side of her body.

26. Plaintiff's husband called Ms. Ann Everett, Acting Regional Administrator, to inform her of the situation.

27. Plaintiff's husband called Ms. Tamala Riggs, Acting Deputy Regional Administrator, who said she would speak to Mr. Tyler about the situation.

28. While Plaintiff's husband was on the phone with Ms. Everett, Mr. Tyler called Plaintiff on her cell phone.

29. Mr. Tyler asked Plaintiff if her husband was speaking for her.

30. Mr. Tyler knew about Plaintiff's health condition and still called her.

31. Mr. Tyler harassed Plaintiff while she was in the hospital recovering.

32. Plaintiff had sent out an email with the information that Mr. Tyler was asking for was in the email.

33. Mr. Tyler could have contacted GSA's IT Security Administrator for information to access Plaintiff's computer.

34. Plaintiff submitted a request of advance sick leave and medical certification of her condition to Human Resources on February 7, 2006.

35. Human Resources submitted the request to Mr. Taylor for approval on February 9, 2006.

36. On February 25, 2006 Plaintiff received a letter by FedEx from Mr. Tyler informing her that he received her request for advanced sick leave and medical certification.

37. In the letter Mr. Tyler wrote that the medical certification stated that it could not be determined when Plaintiff would be able to return to work.

38. Mr. Tyler's letter also stated that consideration was being given to Plaintiff's request based on her previous leave, service records, the circumstances which caused her accumulated sick leave to be exhausted, and whether there was a reasonable expectation that Plaintiff would return to work.

39. Mr. Tyler stated, in the same letter, that if Plaintiff wanted to provide additional information to support her request she had to respond no later than March 3, 2006.

40. Plaintiff was sent other options as well – forms for Leave Donor Program and Family Medical Leave Act.

41. Mr. Charles Wharton attempted to contact Mr. Tyler on numerous occasions to set up a date after receiving Mr. Tyler's letter.

42. Mr. Wharton was the Plaintiff's representative.

43. Mr. Wharton wanted to meet so that the additional information Mr. Tyler requested could be provided to him.

44. Mr. Wharton also wanted to discuss the memo because Plaintiff was concerned that Mr. Tyler was suddenly accusing her of leave abuse.

45. This was the first and only time that Mr. Tyler expressed to Plaintiff that he had a problem with her leave record.

46. Mr. Tyler had always approved Plaintiff's leave requests in advance with no problem.

47. On March 15, 2006 Mr. Wharton and Plaintiff's husband met with Mr. Tyler and Ms. Marge Overly.

48. Ms. Overly was from GSA's Regional Counsels Office.

49. Ms. Overly was introduced as Mr. Tyler's representative.

50. Mr. Wharton presented the additional information requested by Mr. Tyler.

51. Mr. Wharton brought to Mr. Tyler and Ms. Overly's attention Plaintiff's concerns about the memo's implication that Plaintiff had abused her sick leave.

52. According to Mr. Wharton and Plaintiff's husband, Ms. Overly said, "I don't see where it says that in this memo."

53. Mr. Wharton's replied, "Let me read it to you because this is the type of letter that is given to employees that abuse leave."

54. At that point Plaintiff's husband asked Mr. Tyler, "Didn't my wife inform you about her medical issues?"

55. Mr. Tyler responded, "Yes she did."

56. Plaintiff informed Mr. Tyler about her medical issues about a month ago after he came to work for GSA so that he would not think that she was abusing her leave.

57. Ms. Overly said that the memo was written in standard verbiage within GSA guidelines.

58. Ms. Overly said that in no way was the memo stating Plaintiff abused her leave.

59. Mr. Wharton replied, "A standard for what?"

60. Mr. Wharton received no reply.

61. Mr. Wharton and Plaintiff's husband asked Mr. Tyler if he had everything he needed to make his decision in reference to the advance sick leave requested.

62. Mr. Tyler replied, "Yes."

63. Mr. Wharton asked Mr. Tyler if he would have a decision by March 17, 2007.

64. Mr. Tyler replied he would get back to Mr. Wharton.

65. Mr. Wharton never heard from Mr. Tyler.

66. Mr. Wharton called Mr. Tyler on March 20, 2007.

67. Mr. Wharton left messages on several occasions for Mr. Tyler.

68. Mr. Tyler never responded.

69. When Mr. Wharton finally got in touch with Mr. Tyler, Mr. Tyler informed that he never had to deal with such harassment.

70. Mr. Tyler said that any questions having to do with Plaintiff's case had to be addressed to his representative, Ms. Overly.

71. Ms. Overly informed Mr. Wharton that to her knowledge no decision had been made.

72. Plaintiff contacted an EEO counselor in April of 2006.

73. Plaintiff filed an EEO complaint in May of 2006.

74. Plaintiff complained to Human Resources about her rights being violated because there was no response from Mr. Tyler.

75. Plaintiff's husband called Ms. Riggs to let her know that Plaintiff could not get a response.

76. Ms. Riggs replied, "Let me check into this and I will get back to you."

77. Ms. Riggs called Plaintiff back two days later.

78. Ms. Riggs informed Plaintiff that Mr. Tyler had made his decision.

79. Ms. Riggs saw a draft copy of the memo that was going to be sent to Plaintiff by mail.

80. Ms. Riggs said that Plaintiff's request for advance sick leave had been denied and the reason for denial was explained in the memo.

81. Plaintiff received the memo dated April 7, 2006 by FedEx on April 10, 2006.

82. The memo stated that Plaintiff's advance sick leave request was denied because her situation was not meritorious and after carefully considering her request, documentation from the doctor, and a conversation that they had.

83. The conversation mentioned in the memo never took place.

84. Plaintiff does not recall ever discussing or Mr. Tyler mentioning any of those concerns to her.

85. Mr. Tyler wrote that Plaintiff's situation was not meritorious even though she had a stroke and was partially paralyzed.

86. Defendant's management refused to respond to Plaintiff's request for advance sick leave due to the stroke that she submitted on January 28, 2006.

87. Plaintiff's husband hand delivered the paperwork for her on February 7, 2006 to Human Resources.

88. Human Resources sent the paperwork to Mr. Tyler on February 9, 2006.

89. According to Mr. Tyler's letter, it was sent to Plaintiff on February 23, 2006.

90. The letter dated February 23, 2006 stated that Mr. Tyler was considering the request but more information was needed.

91. Plaintiff was advised of the Family Medical Leave Act and the Leave Donor's Program.

92. Plaintiff completed the paperwork for the Family Medical Leave Act and the Leave Donor's Program on March 15, 2006.

93. Before the paperwork was processed, Plaintiff found out that Mr. Tyler had used her annual leave during her absence without Plaintiff's approval.

94. Given that Mr. Tyler did not approve Plaintiff's request for 240 hours advance sick leave Plaintiff's absence was charged to her annual leave.

95. Mr. Tyler's action resulted in Plaintiff using up all of her annual leave during her absence.

96. Plaintiff recalls that after she was admitted into the hospital, Mr. Tyler instructed her not to worry about her sick leave.

97. Mr. Tyler had said that everything would be fine and told Plaintiff to focus on her recovery.

98. Mr. Tyler did not state that he had a problem with Plaintiff's sick leave during this conversation.

99. Plaintiff upholds that she had thirty-five hours of sick leave prior to her request.

100. Plaintiff upholds that she had one hundred ninety hours of annual leave prior to her request.

101. Plaintiff upholds that she had no time issues prior to her request.

102. Plaintiff upholds that she had no attendance issues prior to her request.

103. Previously, Mr. Tyler would sometimes let Plaintiff substitute her annual leave for her sick leave.

104. Plaintiff is unaware if other employees were granted advance sick leave.

105. Mr. Tyler prolonged the process of making a decision regarding Plaintiff's sick leave.

106. Mr. Tyler received Plaintiff's request on February 9, 2006.

107. Mr. Tyler received additional documents from Plaintiff on March 15, 2006.

108. Mr. Tyler did not give a final decision until April 7, 2006.

109. Mr. Tyler prolonged the process when Plaintiff requested to work at home during her recovery.

110. Plaintiff made the claim in April 2006 citing the Americans with Disabilities Act.

111. Mr. Tyler and Human Resources further delayed the process by requesting additional information.

112. Plaintiff and her doctor were frustrated by the fact that additional information could have been requested at the beginning of the request thus not having to delay the process.

113. From the stroke date until August 3, 2006, Plaintiff was unable to work this entire time.

114. On August 3, 2006, Plaintiff's doctor approved Plaintiff to work 30 hours a week.

115. On September 15, 2006, Mr. Tyler cut the 30 hours a week to 20 hours.

116. The agency was supposed to have set up a government computer system at Plaintiff's residence t enable her to work from home.

117. Said set up of the government computer system could have been accomplished by October 1, 2006.

118. However, the computer system wasn't set up until November 26, 2006.

## FIRST CAUSE OF ACTION
## FAILURE TO ACCOMMADATE A DISABILITY
## AND DISABILITY DISCRIMINATION

Plaintiff hereby re-alleges and incorporates by reference all paragraphs.

119. Plaintiff is an individual with a "disability" within the meaning of the Section 501 of the Rehabilitation Act, 29 U.S.C section 791 et., seq., and statutes incorporated therein.

120. Plaintiff continues to suffer from her stroke, including but not limited to partial paralysis.

121. Plaintiff could still perform the essential functions of the position.

122. The employer, as per the statute, had a duty to accommodate Plaintiff.

123. Plaintiff requested reasonable accommodation.

124. Defendant could have accommodated plaintiff and failed to.

125. Defendant violated the aforementioned statute.

126. Defendant discriminated against Plaintiff because similarly situated employees in Plaintiff's position who were not disabled were not treated in this manner.

WHEREFORE, Plaintiff prays that she be awarded the following relief: (a) a declaratory judgment that the conduct engaged in by Defendant was a violation of Plaintiff's legal rights; (b) an injunction enjoining Defendant from engaging in such conduct in the future; (c) an order directing Defendant to pay an award of back pay and fringe benefits and/or front salary and benefits to the Plaintiff of $100,000.00; (d) an order directing the Defendant to pay an award of statutory compensatory damages (pecuniary and non-pecuniary) up to the maximum amount permitted by statute, $300,000.00; (e) an order directing Defendant to pay reasonable attorneys' fees and costs of this litigation; and (f) such other relief as the Court may deem just and appropriate.

## SECOND CAUSE OF ACTION
## DISCRIMINATION BASED ON RACE

Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

127. The aforesaid discriminatory treatment by Defendants toward Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of her employment.

128. Other similarly situated employees not of Plaintiff's race were not subject to the same conditions of employment as Plaintiff.

129. A causal connection exists between Defendant's aforementioned actions towards the Plaintiff and her race.

130. Defendant's actions constituted a violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000(e) *et seq*.

131. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness,

shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages.

WHEREFORE, Plaintiff prays that she be awarded the following relief: (a) a declaratory judgment that the conduct engaged in by Defendant was a violation of Plaintiff's legal rights; (b) an injunction enjoining Defendant from engaging in such conduct in the future; (c) an order directing Defendant to pay an award of back pay and fringe benefits and/or front salary and benefits to the Plaintiff of $100,000.00; (d) an order directing the Defendant to pay an award of statutory compensatory damages (pecuniary and non-pecuniary) up to the maximum amount permitted by statute, $300,000.00; (e) an order directing Defendant to pay reasonable attorneys' fees and costs of this litigation; and (f) such other relief as the Court may deem just and appropriate.

### THIRD CAUSE OF ACTION
### DISCRIMINATION BASED ON SEX

Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

132.  The aforesaid discriminatory treatment by Defendants toward Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of her employment.

133.  Other similarly situated employees not of Plaintiff's gender were not subject to the same conditions of employment as Plaintiff.

134.  A causal connection exists between Defendant's aforementioned actions towards the Plaintiff and her gender.

135.  Defendant's actions constituted a violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000(e) *et seq*.

136. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages.

WHEREFORE, Plaintiff prays that she be awarded the following relief: (a) a declaratory judgment that the conduct engaged in by Defendant was a violation of Plaintiff's legal rights; (b) an injunction enjoining Defendant from engaging in such conduct in the future; (c) an order directing Defendant to pay an award of back pay and fringe benefits and/or front salary and benefits to the Plaintiff, of $100,000.00; (d) an order directing the Defendant to pay an award of statutory compensatory damages (pecuniary and non-pecuniary) up to the maximum amount permitted by statute, $300,000.00; (e) an order Directing Defendant to pay reasonable attorneys' fees and costs of this litigation; and (f) such other relief as the Court may deem just and appropriate.

## FOURTH CAUSE OF ACTION
## DISCRIMINATION BASED ON RETALIATION

Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

137. The aforesaid discriminatory treatment by Defendants toward Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of her employment.

138. Other similarly situated employees who did not complain about discrimination were not subject to the same conditions of employment as Plaintiff.

139. A causal connection exists between Defendant's aforementioned actions towards the Plaintiff and her complaints of discrimination.

140. Defendant's actions constituted a violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000(e) *et seq*.

141. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages.

WHEREFORE, Plaintiff prays that she be awarded the following relief: (a) a declaratory judgment that the conduct engaged in by Defendant was a violation of Plaintiff's legal rights; (b) an injunction enjoining Defendant from engaging in such conduct in the future; (c) an order directing Defendant to pay an award of back pay and fringe benefits and/or front salary and benefits to the Plaintiff, of $100,000.00; (d) an order directing the Defendant to pay an award of statutory compensatory damages (pecuniary and non-pecuniary) up to the maximum amount permitted by statute, $300,000.00; (e) an order directing Defendant to pay reasonable attorneys' fees and costs of this litigation; and (f) such other relief as the Court may deem just and appropriate.

_____/s/_____
Morris E. Fischer, Esq.
Air Rights Center
4550 Montgomery Avenue
Suite 601N
Bethesda, MD 20814
(301) 469-3498 phone
(240) 235-7074 fax

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
_____

Anita L. Stringfellow

710 Fifty Sixth Place, N.E.
Washington, DC 20019

   Plaintiff,

Vs.
               CASE NO:

U.S. General Services Administration

National Capital Region
Program Support Division (WCA)
301 7th Street, N.W.
Washington, DC 20407-0001

   Defendant,

_____


**<u>PLAINTIFF'S JURY DEMAND</u>**


  Pursuant to Federal Rule of Civil Procedure 38, Plaintiff by counsel herein serves her jury demand upon Defendant. Plaintiff herein demands a jury on all issues triable in her case, as listed in her complaint.


        _____/s/_____
        Morris E. Fischer, Esq.
        Air Rights Center
        4550 Montgomery Avenue
        Suite 601N
        Bethesda, MD 20814
        (301) 469-3498 phone
        (240) 235-7074 fax

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Anita L. Stringfellow

**DEFENDANTS**
U.S. General Services Administration

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Wash, DC**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **Wash, D.C.**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Morris E. Fischer, Esq. 4550 Montgomery Ave, Ste. 601N, Bethesda, MD 20814

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ■ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ☐ A. Antitrust
- ☐ 410 Antitrust

### ☐ B. Personal Injury/Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review
- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ H. *Employment Discrimination*<br>☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Failure to accomodate disability, disability discrimination, gender discrimination + race, retaliation   1973, 29 U.S.C. 791, Title VII CRA of 1964

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   ☐

DEMAND $ 1,500,000.00   Check YES only if demanded in complaint   JURY DEMAND: ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY

(See instruction)   ☐ YES   ☒ NO   If yes, please complete related case form.

DATE 11/27/07   SIGNATURE OF ATTORNEY OF RECORD   *N. E. Fisch*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.